FILED
2013 Nov-20  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **STEPHANIE HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **CV-2013-** |
| **CITY OF TUSCALOOSA/ TUSCALOOSA** | ) | |
| **POLICE DEPARTMENT,** | )**JURY DEMAND** | |
| | ) | |
| **Defendants** | ) | |

---

## COMPLAINT

---

COMES NOW the Plaintiff, STEPHANIE HICKS, and files this Complaint to be answered by the Defendant pursuant to the Federal Rules of Civil Procedure.

## I.   JURISDICTION AND VENUE

1.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C. §1391.

2.   This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq,* the Family and Medical Leave Act of 1993, 29 U.S.C.§2601 *et. seq.*, as amended, the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §207.

3.   The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights secured by 42 U.S.C. §2000e *et seq*. providing for relief against gender and pregnancy discrimination, and retaliation.

4.   The jurisdiction of this Court is also invoked to secure the protection of and redress the deprivation of rights secured by 29 U.S.C . §2601, *et. seq*. as amended.

5.   The jurisdiction of this Court is also invoked to secure the protection of and redress the depravation of rights secured by 29 U.S.C. § 207, as amended.

6.   The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.*

7.   The Plaintiff timely filed her charges of discrimination within 180 days of occurrence of the last discriminatory act.

8.   The Plaintiff timely filed her lawsuit within 90 days of his receipt of her "Right –to-Sue" letter from the EEOC.

## II.   PARTIES

9.   The Plaintiff, Stephanie Hicks, is over the age of nineteen (19), is a citizen of the United States and is a resident of the State of Alabama.

10. The Defendant, the City of Tuscaloosa, is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as

amended, 42 U.S.C. 2000e *et seq*., 29 U.S.C . §2601, *et. seq*. as amended , and 29 U.S.C. § 207, as amended .

11.  The Defendant employs at least fifty (50) persons for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year within 75 miles of Plaintiff's worksite.

### III.   FACTUAL ALLEGATIONS

12.  The Plaintiff, Hicks, worked for the Tuscaloosa Police Department.

13.  The Tuscaloosa Police Department employees more than fifty (50) employees

14.   In January, 2012, Hicks learned she was 9 weeks pregnant.

15.  Captain Snyder told the Plaintiff the Tuscaloosa Police Department did not have policies and procedures in place for a pregnant employee and that any decision regarding said employee were in the discretion of the Captain.

16. Captain Snyder told Hicks he did not want her on call while she was pregnant due to the hazards associated with being on call.

17. Captain Snyder also told Hicks he did not want her to go to her scheduled training due to the days away from home while she was pregnant.

18.  As a result, Hicks was placed in pharmaceuticals working on forged prescriptions helping other agents with their interviews, handling evidence, and preparing logs.

19.  Prior to the baby being born, Hicks followed instructions of Captain Snyder and Chief Anderson by generating new cases from her own investigations, working together with surrounding agencies on linked prescription forgeries, obtaining warrants, assisting with other agents on interviews, complaints and drug operations.

20.  Hicks also served as log agent on all search warrants-leaving the entry to the other agents, attended court for testimony and case deposition and completed several cases filed including all necessary reports and paperwork.

21. The baby was born on August 23, 2012.

22. Hicks took the full twelve (12) weeks of Family and Medical Leave provided by Federal laws.

23. Hicks first day of leave was August 17, 2012.

24. The Family and Medical Leave was approved by the Tuscaloosa Police Department/City of Tuscaloosa.

25.  Hicks was an eligible employee due to the fact she had worked 1250 hours preceding the request for leave and that she had been employed with the Tuscaloosa Police Department for over one year.

26. While Hicks was out on Family and Medical Leave, her captain, Captain Snyder was moved to motor vehicles and Wayne Robertson was promoted to Captain in narcotics.

27. After Captain Wayne Robertson was promoted, and while still out on FMLA leave, Hicks began to suffer from intimidation, harassment, wrongful discipline, and discrimination.

28.  On the day of the first Alabama game, Hicks' husband, who is also a Tuscaloosa Police Department employee, received a call and was required to work at the stadium.

29. Hicks' husband's vehicle had been borrowed for the predicted weather of a potential hurricane so he did not have a vehicle.

30. In the past, Leuitenant Madison had advised both Hicks and Hick's husband that both could operate the unit.

31.  At the time, there was no written policy in place regarding police vehicles and other officers driving police vehicles.

32.  Sargent Spencer had previously informed Hicks he had used his vehicle for a family vacation.

33.  Captain Snyder had previously told Hicks, in March 2012, to have her husband drive her in her assigned vehicle to a conference.

34.  Hicks' husband, as a uniformed Tuscaloosa Police Officer, drove Hicks' vehicle to duty.

35. Captain Robertson saw Hicks' husband in the vehicle and asked him to park it.

36.   That same day, Sargent Spencer and Sargent Richardson came to Hicks' home, and picked the vehicle, not following protocol.

37.   Sargent Herron was allowed to keep his unit at his home while he was on medical leave.

38.   The vehicle was out of service because Hicks was on Family and Medical Leave.

39.   Because the vehicle was out of service it did not need an oil change.

40.   The policies and procedures clearly indicate scheduling maintenance and servicing of city employees is the responsibility of the garage supervisor or foreman.

41.   No one has ever been written up for failing to change the oil.

42.   After this incident, Hicks received a call from BL Windham who indicated to her he overheard Seargent Richardson and SM Brissie talking about how Hicks was going to be written up immediately upon her return from Family and Medical Leave for said non-violation and how she was not going to "work out" with Captain Robertson.

43.   Upon Hicks' return to work, on the first day she was back, she was written up for failing to change the oil which is not her responsibility pursuant to policies and procedures.

44.  Also, on the first day back to work, Hicks was written up a second time for "failing to obey a direct order".

45.  This second write up was false.

46.  Prior to going on Family and Medical leave, Hicks had worked up a case which had 18 charges/warrants ready for a lady who had forged prescriptions.

47.  Sargent Richardson had suggested to Hicks that she did not have to do all of the 18 charges by doing a presentment to the grand jury instead.

48. At no time did Sargent Richardson order Hicks to perform the work in the manner described in paragraph 47.

49.  At the time Sargent Richardson made this suggestion, the work on all 18 charges had already been completed.

50.  Hicks held onto the warrants and placed the warrants in her desk because she wanted to finish working up the case when she returned from Family and Medical Leave.

51.  While out on Family and Medical Leave, Sargent Tina Richardson went into Hicks desk, served four (4)of the warrants, and had the remainder of the warrants (with tremendous difficulty and without following protocol) recalled.

52. The District Attorney emailed Hicks wondering why Hicks did not follow procedure and have all of the warrants issued.

53.  Both of the write-ups occurred within one (1) hour of return from FMLA on November 26, 2012.

54.  During the meeting where Hicks was being written up, Captain Robertson acknowledged allowing someone else to drive her vehicle was not a violation so he could not write her up for that, and so he claimed he wrote her for failing to change the oil instead which is also not a violation.

55.  During this meeting wherein Hicks was wrongfully written up, Hicks notified the Captain she was continuing to nurse and needed to takes two breaks a day to pump breast milk.

56. In response, Captain Robertson told Hicks there had been some changes and that she would need to get with Sargent Barker.

57.  Hicks told Captain Robertson she had to pick the baby up every day from daycare at 5:00 and explained this would not interfere with her schedule because she got off at 4:00 p.m.

58. Captain Robertson replied he didn't think that would work out for her because he was about to shift her schedule.

59.  At that time, Captain Robertson told Hicks he was taking all of her pharmacy diversion investigations away from her.

60.  On Hicks' 4th day back, she was called into Richardson's office claiming Hicks' doctor did not send the proper paperwork for her return to work.

61.  Captain Robertson told Hicks he was angry and wanted to write her up for the fact the paperwork had not been sent, but acknowledged again there was no violation.

62.  Hicks explained the person in charge of paperwork was gone and that she would get the paperwork the next day.

63. Hicks again expressed her concern to Captain Robertson about being a working mom.

64.  The next day, when Hicks returned, she was informed that she was "different" now that she was back.

65.   After her return, Hicks received a negative evaluation which covered the time she was out on Family and Medical Leave, July 1, 2012 to September 30, 2012.

66. The evaluation stated if the Captain did not see improvement, she would be replaced.

67.  Hicks had not received a negative evaluation prior to this evaluation, nor had she received any counseling or discipline prior to taking her leave.

68. On December 6, 2012, Hicks appeared for and worked 5 hours.

69. Sargent Richardson told her she was not going to be paid for the 5 hours and that she was on sick time.

70. Hicks did not get paid for the 5 hours.

71.  On December 6, 2012, Hicks was told she was going to go "on call" from 4:00 p.m. to 8:00 p.m. starting in 3 days.

72.  On December 7, 2012, Hicks was reassigned to patrol.

73.  Hicks complained to Captain Robertson and asked why she was being reassigned only 6 days of work after return from Family and Medical Leave for having her baby, and explained she felt like she was being punished for having a baby.

74.  Sargent S. Herron and Sargent T. Kempster both took medical leave and were also reassigned immediately upon return.

75.  Patrol was a demotion with a decrease in pay, loss of vehicle, and loss of weekends off.

76. Per the City of Tuscaloosa's employee policies, a reassignment and decrease in pay is a form of disciplinary action.

77. Per the City of Tuscaloosa's employee policies, a disciplinary action requires certain errors to occur.

78. Once the error occurs, the employee is advised that a disciplinary action will be brought against them and the employee has an opportunity to respond.

79.  Once the response is made, the Board will meet and agree or disagree with the employee's response to disciplinary action and pursue as needed.

80. None of the necessary errors occurred to administer discipline.

81. None of the procedures were followed before Hicks was reassigned.

82. Hicks was told the Sargent had written a letter explaining she wanted her reassigned, however, the letter could not be produced to Hicks when she asked for it.

83.  The letter was not in Hicks file on December 11, 2012.

84. The next day, Hicks was provided a letter which was dated the same day she was reassigned, December 7, 2012. This is not protocol.

85. On December 12, 2012, Sargent Richardson called Hicks and told her she was going to write her up, "even worse than before" if she did not  go swear to an arrest, which Hicks had already done.

86. On December 13, 2012, Hicks overheard Sargent Richardson talking to Captain Robertson about trying to write her up for failing to do something she had already done, but that she would find another way to write her up.

87. Captain Robertson said in response, "fuck her, I'll take care of her, she is not staying here".

88. Sargent Richardson continued stating, Sargent Spencer told her Hicks had been crying this week, and she told him "so what, I'm going to find out about her file and how much vacation time she has left."

89. Captain Robertson replied, "fuck her, that bitch".

90. Hicks saw Sargent Richardson leave the office so she told her she heard them talking.

91. Richardson told Hicks to sit in her office.

92. Richardson told Hicks among other things that she just wasn't the same since she was back from maternity leave.

93. Other females, who came back from maternity leave, who were not under Captain Robertson were given desk or investigative jobs, however these females were not breast feeding.

94. One female, who wished to breast feed, was told she had to choose between breast feeding and her job—she chose her job.

95. Upon being reassigned, Hicks complained to Major Spruel about being reassigned to patrol,  explained it would be difficult to wear a vest while lactating and would be difficult to pump breast milk while on patrol, and requested to be placed on a desk job.

96. Hicks' doctor had provided her with a letter explaining a fitted vest could lead to lower breast milk production and potentially cause infection.

97. Spruel told Hicks he was told she volunteered to come out of narcotics which was not true.

98.  Major Spruel suggested accommodation was to place Hicks on patrol downtown so that she could express her milk at the public restroom at the Riverwalk.

99.  Hicks informed Major Spruel the suggested accommodation is in violation of the Fair Labor Standards Act which requires privacy and this statement rendered him angry.

100.   Spruel also told Hicks she could wear a vest that was too large for her.

101.   A large vest is ineffective and would render Hicks on her patrol without any protection.

102.   The Tuscaloosa Police Department policies specifically indicate a vest must comport with protective and related requirements prescribed under current standards of the National Institute of Justice.

103.   The Plaintiff was told she needed to report to work on patrol when she had not been re-certified to carry a gun, did not have a proper protective vest, and did not even have a patrol uniform.

104.   The Plaintiff was forced to take sick days due to the fact she was still breast feeding and could not patrol.

105.   The Plaintiff eventually was constructively discharged due to the failure to accommodate and comply with the laws of this nation.

## VI. CLAIMS

## COUNT I-FMLA

106.        The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-106 as if fully set out herein.

107.        The Plaintiff was an eligible employee as provided by the FMLA in that she had worked for the Defendant for more than one (1) year and had worked 1250 hours within the previous 12 month period.  29 U.S.C. § 2611(2).

108.        The Defendant was an employer within the meaning of the FMLA in that it employed more than 50 employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. §2611( 4).

109.        The Plaintiff was entitled to a total of 12 workweeks during the 12 month period for the birth of her child. 29 U.S.C. §2612(a)(1)(A).

110.        The Plaintiff was entitled to be restored by the employer to the position of employment held by the employee when the leave commenced or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  29 U.S.C. §2614(a)(1)(A)-(B).

111.        The Defendant interfered with the Plaintiff's exercise of rights when it wrongfully wrote up the Plaintiff  two (2) times while she was out on leave in contradiction to written employment policies, made the decision to demote her

prior to her return from leave, gave the Plaintiff a poor evaluation for the first time for the time period of her being on leave, stating to her she was different now that she was back, stating "fuck her" and "that bitch" when it learned she had been crying, by conspiring to write her up for any reason, and by demoting her after 6 work days of her return from leave, by failing to follow policy and procedure when effectuating said demotion/reassignment , failing to properly accommodate her for her breastfeeding, failing to provide her the proper necessary safety equipment such as a vest, constructively discharging her, and any other unlawful conduct by the defendant. 29 U.S.C. 2615 (a)(1).

112.    The Defendant discriminated with the Plaintiff's exercise of rights when she complained about the unlawful treatment when it conspired to get rid of her by attempting to find reasons to write her up, it demoted her only 6 work days after her return from leave, by failing to follow policy and procedure when effectuating said demotion/reassignment, failing to properly accommodate her for her breastfeeding, failing to provide her the proper necessary safety equipment such as a vest constructively discharging her, and any other unlawful conduct by the Defendant.  29 U.S.C. 2615 (a)(1).

113.    As a result of the Defendant's willful and unlawful violations of the FMLA, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other

compensation, liquidated damages, loss of out of pocket expenses, emotional

distress, humiliation, embarrassment, constructive discharge, and loss of career. 29

U.S.C. §2617.

114.     As a result of the Defendant's willful and unlawful violations of

the FMLA, the Plaintiff is seeking compensatory damages, punitive damages,

liquidated damages,  attorney's fees and costs of litigation.  29 U.S.C. §2617.

## COUNT II-GENDER DISCRIMINATION-HOSTILE WORK ENVIRONMENT

112.   The Plaintiff adopts and re-asserts each and every allegation contained

in paragraph 1-115 as if fully set out herein.

113.   The Plaintiff was an employee as defined by 42 U.S.C. §2000 (e)(f)

because she was an individual employed by the Defendant employer.

114.   The Defendant was an employer within the meaning of the Civil

Rights Act of 1991 in that it employed more than fifteen (15) employees for each

working day during each of twenty (20) or more calendar workweeks in the

current or preceding calendar year.  42 U.S.C. §2000(e)(b).

115.   The Plaintiff fulfilled her The Plaintiff has fulfilled all conditions

precedent to the institution of this action under Title VII of the Act of Congress

known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of

1991", 42 U.S.C. §2000e *et seq.*

116.   The Plaintiff timely filed her charges of discrimination within 180 days of occurrence of the last discriminatory act. 42 U.S.C. §2000 e-5(e)(1).

117.   The Plaintiff timely filed her lawsuit within 90 days of his receipt of her "Right –to-Sue" letter from the EEOC. 42 U.S.C. §2000 e-5 (f)(1).

118.   The Plaintiff is a member of a protected class, she is female.

119.   The Defendant discriminated against the Plaintiff with respect to her compensation, terms, conditions, and privileges of employment based on her sex when it including, but not limited to, wrongfully wrote her up two times, made the decision to demote her before returning from maternity leave, limited her training during her pregnancy, giving her a poor evaluation which was dated during her pregnancy leave, demoted her without following protocol, told her she was different when she was back, said "fuck her" when it learned she had been crying, refused to accommodate her breastfeeding within the laws of this nation, failed to give her the proper safety equipment, and eventually constructively discharged her. 42 U.S.C. §2000 e-2(a)(1).

120.   The Defendant limited the Plaintiff in such a way which deprived her of employment opportunities and adversely effected her status as an employee because of her sex when it including, but not limited to, wrongfully wrote her up two times, made the decision to demote her before returning from maternity leave, limited her training during her pregnancy, giving her a poor evaluation which was

dated during her pregnancy leave, when it conspired to write her up for any reason, demoted her in violation of policy and procedures, told her she was different when she was back, said "fuck her" "that bitch" when it learned she had been crying, refused to accommodate her breastfeeding within the laws of this nation, failed to provide the proper safety equipment, and eventually constructively discharged her. 42 U.S.C. §2000e-2(a)(2).

121.   Based on the unlawful conduct expressed in paragraphs 119 and 120, the Defendant created a hostile work environment effecting the terms and conditions of the employment of the Plaintiff.

122.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other compensation, liquidated damages, loss of out of pocket expenses, emotional distress, humiliation, embarrassment, constructive discharge, and loss of career.

123.   As a result of the Defendant's willful and unlawful violations of the FMLA, the Plaintiff is seeking compensatory damages, punitive damages, liquidated damages, attorney's fees and costs of litigation.  29 U.S.C. §2617.

**COUNT III- GENDER DISCRIMINATION-DISPARATE TREATMENT**

124.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1- 123 as if fully set out herein.

125.   The Plaintiff was an employee as defined by 42 U.S.C. §2000 (e)(f) because she was an individual employed by the Defendant employer.

126.   The Defendant was an employer within the meaning of the Civil Rights Act of 1991 in that it employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.  42 U.S.C. §2000(e)(b).

127.   The Plaintiff fulfilled her The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.*

128.   The Plaintiff timely filed her charges of discrimination within 180 days of occurrence of the last discriminatory act. 42 U.S.C. §2000 e-5(e)(1).

129.   The Plaintiff timely filed her lawsuit within 90 days of his receipt of her "Right –to-Sue" letter from the EEOC. 42 U.S.C. §2000 e-5 (f)(1).

130.   The Plaintiff is a member of a protected class, she is a pregnant female.

131.  The Defendant discriminated against the Plaintiff with respect to her compensation, terms, conditions, and privileges of employment based on her sex/pregnancy when it wrongfully wrote her up two times, made the decision to demote her before returning from maternity leave, limited her training during her

pregnancy, giving her a poor evaluation which was dated during her pregnancy leave, demoted her without following protocol, told her she was different when she was back, said "fuck her" when it learned she had been crying, refused to accommodate her breastfeeding within the laws of this nation, failed to provide the proper safety equipment, and eventually constructively discharged her. 42 U.S.C. §2000 e-2(a)(1).

131.   No other male employee has been written up for failing to put gasoline in the car.

133.  Male employees allowed other officers to drive the car or drove their car for personal reasons and were not reprimanded.

134. Male officers were not demoted without due process.

135. Male officers were given the proper safety equipment.

136.  Male officers were given proper and appropriate training.

137.  Based on the unlawful conduct expressed in paragraphs 130 and 137, the Defendant is liable for disparate treatment.

138.  As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other compensation, liquidated damages, loss of out of pocket expenses,

emotional distress, humiliation, embarrassment, constructive discharge, and loss of career.

139.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff is seeking compensatory damages, punitive damages, liquidated damages, attorney's fees and costs of litigation.

**COUNTY IV-PREGNANCY DISCRIMINATION**

140.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1- 139 as if fully set out herein.

141.   The Plaintiff was an employee as defined by 42 U.S.C. §2000 (e)(f) because she was an individual employed by the Defendant employer.

142.   The Defendant was an employer within the meaning of the Civil Rights Act of 1991 in that it employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.  42 U.S.C. §2000(e)(b).

143.   The Plaintiff fulfilled her The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.*

144.   The Plaintiff timely filed her charges of discrimination within 180 days of occurrence of the last discriminatory act. 42 U.S.C. §2000 e-5(e)(1).

145.   The Plaintiff timely filed her lawsuit within 90 days of his receipt of her "Right –to-Sue" letter from the EEOC. 42 U.S.C. §2000 e-5 (f)(1).

146.   The Plaintiff is a member of a protected class, she is a pregnant female.

147.   The Defendant discriminated against the Plaintiff with respect to her compensation, terms, conditions, and privileges of employment based on her sex/pregnancy when it, including, but not limited to, wrongfully wrote her up two times, made the decision to demote her before returning from maternity leave, limited her training during her pregnancy, giving her a poor evaluation which was dated during her pregnancy leave, demoted her without following protocol, told her she was different when she was back, said "fuck her" when it learned she had been crying, refused to accommodate her breastfeeding within the laws of this nation, failed to provide the proper safety equipment, and eventually constructively discharged her.

148.   The Defendant could have easily accommodated her breast feeding and post pardon depression issues because other females who were not under Captain Robertson were allowed to take desk jobs for a while after the birth of their baby.

150.   The requested accommodation would not have caused the employer any hardship much less undue hardship.

151.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other compensation, liquidated damages, loss of out of pocket expenses, emotional distress, humiliation, embarrassment, constructive discharge, and loss of career.

152.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff is seeking compensatory damages, punitive damages, liquidated damages, attorney's fees and costs of litigation.

**COUNT V-FLSA**

153.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-152 as if fully set out herein.

154.  The Defendant employs more than fifty (50) employees at the time of the alleged offenses.

155.  The Plaintiff was breast feeding her newborn baby upon her return from FMLA.

156.  The Defendant did not provide,

 (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and (B) a place, other than a bathroom, that is shielded from view and free from intrusion from co-workers and the public, which may be used by an employee to express breast milk.

Section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C. 207, *as amended*

157.   As a result of the Defendant's willful and unlawful violations of the FLSA, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other compensation, liquidated damages, loss of out of pocket expenses, emotional distress, humiliation, embarrassment, constructive discharge, and loss of career.

158.   On December 6, 2013, the Plaintiff worked five (5) hours during the day.

159.   The Defendant placed the Plaintiff on sick time and did not pay her for the five (5) hours of time she worked.

160.   As a result of the unlawful activity of the Defendant, the Plaintiff was forced to forgo the five (5) hours of pay, forced to take sick leave to accommodate her own breast feeding, and was constructively discharged rendering her losing her wages, benefits, seniority, and career.

161.   As a result of the Defendant's knowing, intentional, willful and unlawful violations of the FLSA, the Plaintiff is seeking  compensatory damages, punitive damages, liquidated damages, attorney's fees and costs of litigation.

## V.    RETALIATION

162.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-161 as if fully set out herein.

163.   The Defendant retaliated against the Plaintiff when she exercised her rights to FMLA leave, and when objected to the unlawful practices upon her return to work.

164.   Specifically,  the Defendant retaliated against the Plaintiff when she was written up wrongfully two times against protocol, when she was given a poor evaluation for the duration she was on maternity leave, when she was demoted to patrol, given less pay, worse hours, weekends, and her vehicle was taken away.

165.   The Captain immediately took away her job duties on her day of return from FMLA leave.

166.   When she complained, she was harassed and intimidated.

167.   After she complained the Captain conspired with Sargent Richardson to have her removed and sent back to patrol.

168.   The Captain and the Sargent conspired to write up the Plaintiff for ANY reason whether there was a violation or not in order to have her demoted.

169.   The Captain demoted the Plaintiff without due process or following protocol.

170.   Once arrived in patrol, she was forced to take sick leave and was ultimately constructively discharged due to the fact she was not accommodated for expressing milk, or given proper safety attire and breaks.

171.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Family Medical Leave Act, and the Fair Labor Standards Act, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other compensation, liquidated damages, loss of out of pocket expenses, emotional distress, humiliation, embarrassment, constructive discharge, and loss of career.

172.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff is seeking compensatory damages, punitive damages, liquidated damages, attorney's fees and costs of litigation.

**VI-CONSTRUCTIVE DISCRIMINATORY DISCHARGE**

173.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-172 as if fully set out herein.

174.   The Defendant created an environment that was so hostile toward the Plaintiff due to the birth of her baby and due to the fact that she was breast feeding her baby, the Plaintiff was constructively discharged.

175.   The Plaintiff was written up wrongfully two times, made the decision to demote her before returning from maternity leave, limited her training during

her pregnancy, giving her a poor evaluation which was dated during her pregnancy leave, demoted her without following protocol, told her she was different when she was back, said "fuck her" when it learned she had been crying, refused to accommodate her breastfeeding within the laws of this nation, failed to provide the proper safety equipment, and eventually constructively discharged her.

176.   The Defendant was trying to force the Plaintiff to wear a vest that was ineffective and not protective, the defendant did not accommodate the Plaintiff with a proper place to express her milk, the Defendant could not accommodate her need for breaks on patrol.

177.   The constant intimidation and harassment forced the Plaintiff to be constructively discharged.

178.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Family Medical Leave Act, and the Fair Labor Standards Act, the Plaintiff has been caused to suffer loss of wages or salary, loss of benefits, loss of not having to work on weekends, loss of vehicle, loss of other compensation, liquidated damages, loss of out of pocket expenses, emotional distress, humiliation, embarrassment, constructive discharge, and loss of career.

179.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff is seeking compensatory damages, punitive damages, liquidated damages, attorney's fees and costs of litigation.

**VII-DAMAGES**

180.   The plaintiff has suffered  embarrassment, humiliation, shame,
damage to reputation, mental distress, emotional and physical pain and anguish,
lost wages(front and back pay), out of pocket expenses, loss of benefits, retirement,
pension, seniority, loss of not working on weekends, loss of vehicle, loss of career
as a consequence of the defendant's unlawful conduct.

**VI.   PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully prays that this Court assume
jurisdiction of this action and after trial:

1.     Enter an Order requiring the defendant to make the plaintiff whole by
awarding her compensatory and punitive damages including, but not limited to:
lost wages ( back and future plus interest), out of pocket expenses, emotional
distress, loss of benefits, including retirement, pension, seniority, loss of not
working on weekends, loss of vehicle, loss of career and other benefits of
employment.

2.     The Plaintiff further prays for such other relief and benefits as the
cause of justice may require, including, but not limited to, an award of costs,
attorney's fees and expenses.

3.     The Plaintiff further prays for any other relief as justice so requires.

## <u>THE PLAINTIFF DEMANDS A JURY TRIAL</u>

Respectfully Submitted,

_____
Patricia A. Gill, Attorney for the
Plaintiff

OF COUNSEL

PATRICIA A. GILL, P.C.
PO BOX 55304
BIRMINGHAM, AL 35255
(205) 307-9555
patriciagill@yahoo.com

**<u>SERVE DEFENDANT BY CERTIFIED MAIL AT:</u>**
City Clerk
<u>Tracy Croom</u>
2201 University Blvd.
Tuscaloosa, AL 35401