IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:13-cv-02063-TMP |
| | ) | |
| CITY OF TUSCALOOSA, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

On February 19, 2016, the jury returned a verdict in this case in the total amount of $374,000.00, on findings that the defendant had discriminated against the plaintiff on the basis of her pregnancy-related medical conditions and had retaliated against her for taking twelve weeks of leave under the Family and Medical Leave Act ("FMLA"). (Doc. 78). The jury's answers regarding compensatory damages raised questions regarding a possible double recovery or excessive recovery, to which the defendant objected at the time the verdict was returned. For the reasons explained below, the court agrees that the judgment is due to be reduced to eliminate a double recovery by the plaintiff.

I. Procedural History

First it is important to understand the procedural history of the case and claims submitted to the jury at trial. Plaintiff alleged and the jury found[1] that she was employed as a police officer by the defendant, assigned to the West Alabama Narcotics Squad ("WANS"), a multi-jurisdiction police unit formed to combat illegal drug trafficking.[2]  After working a temporary assignment with WANS, plaintiff applied for and was accepted for assignment to the unit in November 2011.  In January 2012, she discovered she was pregnant and notified the WANS commander that she would be taking FMLA leave later in the year.  From August to November 2012, plaintiff was on FMLA leave for the birth of her child.  She returned to work on WANS in late November 2012, at which time she informed her commander that she was continuing to breastfeed the child.  The evidence also shows that, although unrecognized by her at the time, she was suffering from post-partum depression.  Upon her first day back at WANS, she was given a written counseling for two violations of WANS policies and procedures.  Within eight working days of her return to work, the commander of the unit caused her to be

---

[1]  All references to the evidence and jury findings herein take the view of the evidence most favorable to the plaintiff supporting the jury's verdict.

[2]  Often referred to as WANS, the West Alabama Narcotics Squad was made up of officers from the Tuscaloosa Police Department, the Tuscaloosa County Sheriff's Department, the Northport Police Department, and the University of Alabama Police Department.  Because the Tuscaloosa Police Department contributed the most officers and resources to WANS, the commander of the unit was a Tuscaloosa police captain.

removed from WANS and reassigned to patrol duties in the Tuscaloosa Police Department.  As a result of the reassignment, plaintiff no longer received the supplemental "investigator's pay," in the amount of $84.88 per month, over and above her regular patrol-officer pay, which she received while assigned to WANS.[3]  The jury found this reassignment to be both discriminatory, in violation of the Pregnancy Discrimination Act, and retaliatory under the FMLA.  See Special Interrogatories, Doc. 78.

From early December 2012 to January 4, 2013, plaintiff was granted leave to deal with her post-partum depression, which was diagnosed after her transfer from WANS to patrol duties.  On January 4, 2013, she met with the chief of the Tuscaloosa Police Department and the major in charge of patrol duties to discuss accommodations for her breastfeeding.  She expressed concerns about wearing a snug-fitting ballistics vest,[4] which her doctor believed could staunch her milk production and perhaps cause an infection, and the availability of opportunities to pump breast milk during her patrol shift.  When agreement was not reached

---

[3] Plaintiff also lost the use of a city vehicle assigned to her while she worked on the WANS unit, but no evidence of the monetary value of this use of a vehicle was presented at trial.  The jury was given no evidence from which to determine the monetary value that could be assigned to this employment benefit.

[4] A ballistics vest is a bullet-proof and stab-proof vest worn by patrol officers for protection. The vest is tailored to each officer and snug fitting to assure coverage of the officer's vital organs.  Tuscaloosa Police Department regulations required patrol officers to wear a ballistics vest, unless excused by the officer's physician.  As a matter of practice, all officers on actual patrol (as distinct from those given desk assignments) wore vests for safety reasons.

concerning accommodations,[5] plaintiff resigned her position as a patrol officer, and the jury found this was a discriminatory constructive discharge in violation of the Pregnancy Discrimination Act.[6]

---

[5] The constructive-discharge claim was not based simply on the City's failure to "accommodate" the plaintiff's wish to breastfeed. Rather, the evidence was undisputed that the Tuscaloosa Police Department had an "Alternative Duty Policy," under which police officers with temporary medical conditions could be assigned temporarily to a desk job while recovering from the medical condition. Plaintiff argued that she was denied this opportunity while breastfeeding and therefore was treated worse than other similarly-situated officers with non-pregnancy-related medical conditions. Under the facts of this case, the court was not required to determine whether the Pregnancy Discrimination Act includes a duty to provide accommodations for breastfeeding because the theory of the claim was that plaintiff was treated worse than similarly situated officers with respect to her pregnancy-related medical condition.

[6] It is important to note that the plaintiff's constructive discharge claim was based entirely on alleged discrimination due to a pregnancy-related medical condition, not FMLA retaliation. The plaintiff's position statement in the final pretrial order (Doc. 53) related to her constructive discharge claim stated:

> **(4)** <u>The Plaintiff has established a prima facie case of constructive discharge</u>. The Defendant created work conditions that are so "intolerable that a reasonable person" would have felt "forced into involuntary resignation." The plaintiff was breastfeeding and her doctor provided a note indicating wearing a vest could cause infection. After being assigned to patrol, Hicks asked to be assigned to a desk job while she was breastfeeding. Other female officers were placed in a desk job while breast feeding. No other females have worn a vest while breast feeding. The Defendant told Hicks they would accommodate her, but then stated she could either patrol without a vest or wear an ill-fitting vest. Hicks was placed in a position where she was forced to choose between breastfeeding her child and protecting herself on the job. The work environment was hostile due to Hicks' inability to work safely under the limitations imposed by the TPD. All the testimony in this case acknowledged the danger for a patrol officer to work without of a vest and that no one knew of an officer who did so. The City's suggestion that Hicks patrol without a vest, or wear an ill-fitting vest exposed Hicks to a life-and-death risk that other patrol officers were not required to face simply because she wanted to breastfeed her child. When an employer forces the officer to choose between breastfeeding and her own safety, a reasonable person may feel compelled to resign.

See Doc. 53, pp. 10-11. This is the theory of the constructive discharge presented and argued to the jury and on which the court instructed the jury. See Doc. 83, p. 9. Thus, this claim was not

Based on the findings that plaintiff had proven that her transfer to WANS violated *both* the Pregnancy Discrimination Act and the FMLA, and that the constructive discharge from her position as a patrol officer violated the Pregnancy Discrimination Act, the jury award her damages. First, the jury awarded the plaintiff $50,000.00 for the discriminatory transfer from WANS to patrol in violation of the Pregnancy Discrimination Act. That award included both loss of income and benefits (i.e., investigator's pay, pension contributions, etc.) and emotional-distress damages.[7] Because she remained employed as a patrol officer after the transfer, these damages could not have involved loss of her basic compensation as a patrol officer. Next, the jury awarded her $108,000.00 for the constructive discharge in violation of the Pregnancy Discrimination Act. That award included the loss of her basic income and benefits as a patrol officer from

---

based on FMLA retaliation. The FMLA retaliation claim related *only* to her transfer from WANS to patrol. See Doc. 83, pp. 13-15.

[7]  Although the jury's answers to the Special Interrogatories do not include a breakdown of the elements of damages found by the jury, the jury's verdict is considered along with the court's instructions. Myers v. Central Florida Investments, Inc., 592 F.3d 1201, 1217 (11th Cir. 2010) ("The jury verdict is considered alongside the jury instructions…"). Indeed, there is a presumption that the verdict is consistent with the jury's instructions. United States v. Brown, 983 F.2d 201, 203 (11th Cir. 1993) ("The presumption that juries follow their instructions is necessary to any meaningful search for the reason behind a jury verdict."). As to the Pregnancy Discrimination Act claims, the court instructed the jury to consider as damages lost net pay and benefits as well as emotional distress. As to the FMLA-related claims, the court instructed the jury that the proper elements of damages were limited to net lost pay and benefits (but not emotional distress) and statutory liquidated damages. In assessing the maximum amounts the jury could have awarded plaintiff under the most favorable view of the evidence in the case, there is nothing to indicate that the jury based their damages award on anything other than these elements.

the date of the discharge (January 4, 2013) to the date of the verdict, plus emotional-distress damages. Third, the jury awarded plaintiff $108,000.00 for the FMLA-retaliatory transfer from WANS to patrol duties, and, finally, the jury awarded a like amount, $108,000.00, in liquidated damages under the FMLA.

It is these final two awards to which the defendant objects on the ground that they include a double recovery for the same lost income and benefits awarded in the $50,000.00 award made under the Pregnancy Discrimination Act. Because the court also had concerns that there was a double recovery, the court asked the parties to brief this question.

## II.  Double or Excessive Recovery

The court agrees that the jury award of *both* $50,000.00 for pregnancy discrimination *and* $108,000.00 for FMLA retaliation with respect to the plaintiff's transfer from WANS to patrol involves a double recovery. A double recovery occurs when the damages awarded on two or more claims stemming from the same conduct *exceeds* the actual damages proven by the plaintiff at trial. See Democratic Republic of the Congo v. Air Capital Group, LLC, 614 F. App'x 460, 474 (11th Cir. 2015). Because these two awards stem from the same conduct (plaintiff's involuntary transfer off the WANS unit), the court is required to determine whether either of them meets or exceeds plaintiff's actual damages for

that wrongful conduct. For the reasons explained below, the court finds that the $50,000.00 award represents the maximum actual damages plaintiff suffered due to her involuntary transfer from WANS.

The court must determine what elements of *actual* damages underlie these two awards. First, it is apparent that *both* awards compensated plaintiff for the same loss of pay and benefits she suffered due to the transfer. In addressing these two claims, the court instructed the jury to consider as part of her damages the net lost pay and benefits caused by the discriminatory/retaliatory transfer. Under the evidence in this case, the maximum amount of lost wages and benefits under either theory was the loss of "investigator's pay" of $84.88 per month from the date of the transfer (December 7, 2012) to the date of the verdict (February 19, 2016).[8] Counting that time period as 39 months,[9] plaintiff's maximum lost wage and benefits caused by the transfer was $3,310.32.

---

[8] Plaintiff may quibble that she also lost the use of a city-owned vehicle and the benefit of not working night shifts and weekends. But as to the loss of the use of a vehicle, plaintiff offered no evidence at all as to the monetary value of that employment benefit, so the jury had no evidentiary basis on which to calculate a monetary award. As for night shifts and weekend work, the only evidence was that, upon her transfer, plaintiff was assigned to the *day* shift on the Riverwalk beat. Any claim that she might be required to work the night shift is entirely speculative. Also, there was no evidence regarding any pay differentials between working night or weekend shifts and weekday shifts.

[9] The court uses 39 months because this encompasses *all* of December 2012 as well as *all* of February 2016, and the intervening months, in order to capture the *maximum* amount of wages and benefits lost due to the transfer, to the date of the verdict. This gives plaintiff the best possible view of the evidence the jury could have relied upon for their verdict.

Having determined that the only evidence before the jury on which to calculate lost pay and benefits from the transfer was the testimony regarding the "investigator's pay" differential between being assigned to WANS and working as a patrol officer, the court must examine what other kinds of damages plaintiff may have been entitled to recover under these respective theories. Under the Pregnancy Discrimination Act, it is undisputed that, in addition to lost pay and benefits, plaintiff was entitled to recover for emotional distress and mental anguish. That is not true with respect to her FMLA-retaliation claim. The law is very clear that for violations of the FMLA, the only *actual* damages[10] recoverable are lost pay and benefits[11]; there is no entitlement to recover for emotional or mental anguish. "The Plaintiff correctly points out that recovery of non-pecuniary losses, such as emotional pain, suffering, mental anguish, loss of enjoyment of work and humiliation are not provided for under the Family and Medical Leave Act, 29 U.S.C. § 2617(a)." Johnson v. Potter, 732 F. Supp. 2d 1264, 1285 (M.D. Fla. 2010); Harley v. Health Center of Coconut Creek, Inc., 518 F. Supp. 2d 1364, 1370-71 (S.D. Fla. 2007); see also McAnnally v. Wyn South Molded Products, 912 F. Supp. 512, 513 (N.D. Ala. 1996); Godwin v. Rheem Mfg. Co., 15 F. Supp. 2d

---

[10]  The court will discuss interest and liquidated damages under the FMLA below.

[11]  There is an additional damages provision that applies "in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee." 29 U.S.C. § 2617(a)(1)(A). Because plaintiff in this case did lose employment benefits, this provision does not apply.

1197, 1209 (M.D. Ala. 1998). "Under the FMLA, a plaintiff may recover (i) damages due to lost compensation, (ii) interest on that amount, and (iii) liquidated damages equal to (i) and (ii). See 29 U.S.C. 2617(a)(1)." Nero v. Industrial Molding Corp., 167 F.3d 921, 925 (5th Cir. 1999). At least obliquely, the Eleventh Circuit recognized this proposition when it affirmed and adopted the Memorandum Opinion of Judge Nelson in Graham v. State Farm Mutual Insurance Co., 193 F.3d 1274 (11th Cir. 1999), in which Judge Nelson wrote, "the FMLA does not allow recovery for mental distress or loss of job security." Id. at 1284. Likewise, the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have all held that the FMLA does not allow an award of emotional-distress damages. See Montgomery v. Maryland, 72 F. App'x 17, 19 (4th Cir. 2003); Nero, *supra*; Brumbalough v. Camelot Care Centers, Inc., 427 F.3d 996, 1008 (6th Cir. 2005); Cianci v. Pettibone Corp., 152 F.3d 723, 728–29 (7th Cir.1998); Rodgers v. City of Des Moines, 435 F.3d 904, 909 (8th Cir. 2006); Farrell v. Tri-City Metro. Transp. Dist. of Oregon, 530 F.3d 1023, 1025 (9th Cir. 2008); Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1277 (10th Cir. 2001).

It is true that plaintiff also is entitled to recover interest on the monetary damages she claimed under the FMLA. Although the FMLA does not specify what the term "prevailing rate" of interest means, 28 U.S.C. § 1961 defines the interest rate to be used to calculate *post*-judgment interest as "a rate equal to the

weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System." See also Harley v. Health Center of Coconut Creek, Inc., 2008 WL 155045, at *3 (S.D. Fla. Jan. 10, 2008).  Between December 2012 and February 2016, this rate ranged from a low of 0.11% per annum to, more recently, 0.58% per annum.  Using these rates of interest, the interest on plaintiff's lost wages of $3,310.32 amounts to approximately $9.60.[12] Adding this interest to the maximum potential lost wage attributable to the discriminatory/retaliatory transfer, plaintiff's total maximum recovery (not yet counting liquidated damages) under the FMLA was $3,319.92, far short of the $108,000.00 the jury awarded.  The jury simply had no legal or evidentiary basis for awarding more than $3,319.92 (plus liquidated damages, discussed below) for that claim.

This calculation shows that the award of $50,000.00 the jury returned for damages under the Pregnancy Discrimination Act claim encompasses the maximum award of actual damages plaintiff was entitled to recover due to the wrongful transfer.  That award included all of her lost pay and benefits (plus interest) in the amount of $3,319.92, plus the emotional-distress damages she could

---

[12]  The court confesses that, having chosen to pursue a law degree rather than an accounting degree, this calculation may not be accurate.  It is close enough, however, to demonstrate that interest on the lost monetary wages cannot account for over $104,000.00 in additional damages awarded by the jury on plaintiff's FMLA claim. The $50,000.00 award more than adequately accounts for interest on the lost wages, as well as the emotional-distress damages awardable under the Title VII Pregnancy Discrimination Act.

recover under the Pregnancy Discrimination Act, but to which she was not entitled under the FMLA. Because that award contained everything plaintiff was entitled to recover (except for liquidated damages, which are discussed below) under the FMLA and the Pregnancy Discrimination Act, the award of $50,000.00 is the amount to be used for the judgment against the defendant on both claims premised on the wrongful transfer from WANS to patrol duties.

In addition to claiming damages for a wrongful transfer, plaintiff also alleged, and the jury found, that she suffered a constructive discharge about a month later when the City refused to treat her breastfeeding the same as similarly situated officers with non-pregnancy related medical conditions. This constructive discharge claim was premised entirely on the Pregnancy Discrimination Act, not the FMLA, as reflected in the final pretrial order. The award of $108,000.00 for this claim is legally supported by adequate evidence that plaintiff lost three years of basic patrol-officer pay and benefits from the time of the discharge on January 4, 2013, to the verdict on February 19, 2016. This amount also will be included in the judgment against the defendant.

As already described, the $108,000.00 awarded for FMLA retaliation is legally unsupported by any evidence in the record. The court demonstrated above that, based on the admissible evidence before the jury, the maximum amount the jury could have awarded for FMLA retaliation was plaintiff's lost "investigator's

pay" from December 7, 2012, to February 19, 2016, plus interest, in the total amount of $3,319.92.  Because this same amount necessarily was found by the jury to be plaintiff's lost wages resulting from the violation of the Pregnancy Discrimination Act and included in the $50,000.00 award on that claim, she is not entitled to recover it *twice* as a separate award under the FMLA.

The plaintiff argues in her post-verdict brief that the $108,000.00 award for the FMLA-retaliation claim consists of plaintiff's lost pay of $44,000.00 per year less amounts she made as a fitness instructor after leaving the police department. (See Doc. 82, p. 8).  But this misconstrues the evidence in the case.  As noted above, the FMLA claim involved *only* the retaliatory transfer from WANS to patrol; the constructive discharge was entirely *unrelated* to her FMLA claim, being based entirely on a pregnancy-discrimination claim.  Therefore, the only damages attributable to the retaliatory transfer was the difference in pay between what she made as a WANS investigator and as a regular patrol officer.  Simply put, she did not lose her basic pay as a patrol officer due to the FMLA retaliation.  What she lost was the pay differential reflected in the "investigator's pay," and that totals only $3,310.32 (plus interest) over the three years between the transfer and the verdict.

Although the amount of lost wages and benefits under the FMLA is encompassed within the $50,000.00 damages awarded for pregnancy

discrimination, the amount was relevant to the plaintiff's entitlement to liquidated damages. Simply because she suffered the *same* amount of lost wages and benefits under both the FMLA and the Pregnancy Discrimination Act, and has recovered that lost pay under her pregnancy discrimination claim, does not mean she is not entitled to liquidated damages under 29 U.S.C. § 2617(a)(1). Thus, the court submitted to the jury the question of how much wages and benefits plaintiff lost (as distinct from total damages including emotional distress) in order to determine her claim for potential liquidated damages under FMLA. The jury apparently became confused, however, because returning an award of $108,000.00 for FMLA lost wages was simply unsupported by *any* view of the evidence. Because the *maximum* amount of lost wage-and-benefits damages, plus interest, she could recover under the evidence presented with respect to the FMLA claim was $3,319.92, she is entitled to a like amount in liquidated damages, but not more.

The jury's finding that plaintiff is entitled to $108,000.00 in liquidated damages is neither binding on the court nor supported by the evidence at trial. Liquidated damages are presumptively awarded by the court upon a finding that the plaintiff has suffered a compensable loss of wages and benefits under the FMLA. The court has the discretion to deny liquidated damages if the employer demonstrates *both* that it acted in good faith and had a reasonable basis for believing its conduct did not violate the FMLA. See Harley v. Health Center of

13

Coconut Creek, Inc., 2008 WL 155045, at *3 (S.D. Fla. Jan. 10, 2008).  The court finds that the City of Tuscaloosa has not shown that it acted in good faith with respect to plaintiff's retaliatory transfer from WANS to patrol, and therefore, plaintiff is entitled to liquidated damages of $3,319.92 as part of the judgment against the defendant.

### III.  Remittitur and Entry of Judgment

Plaintiff argues that the proper procedure for the court to correct a double recovery or a legally unsupported award of damages is to give the plaintiff the option of accepting a remittitur of the judgment or having a new trial.  (See Doc. 82).  Relying on Johansen v. Combustion Engineering, Inc., 170 F.3d 1320 (11th Cir. 1999), she asserts that the court has no authority to reduce an excessive verdict because doing so violates the parties' Seventh Amendment right to trial by jury in a civil case.  Although the court agrees that it may not set aside or reduce a verdict "merely because the judge might have awarded a different amount of damages" (Doc. 82, p. 4), that is not the situation presented here.  In this case, as demonstrated above, the jury's award of $108,000.00 for an FMLA-retaliatory transfer from WANS to patrol duties was both a double recovery of all lost wages attributable to the transfer, as well as legally unsupported by *any* evidence for any amount greater than $3,310.32.  Where the amount of damages awarded by the

jury includes amounts for which there is no *legal* basis, the court may simply reduce the judgment to the correct amount legally supported by the evidence.

First, it must be understood what this case is not. This is not a case where the court simply disagrees with the jury's resolution of the facts relevant to the award of damages. Under the Seventh Amendment, the parties are entitled to have the jury resolve questions of fact and credibility presented by the evidence. But this does not mean that the jury can go beyond the evidence and make an award that is not *legally* supported by evidence in the record. The Eleventh Circuit has explained the rule, saying:

> As a general rule, "a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir. 1985); see also Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1284 (11th Cir. 2000) ("The rule in this circuit states that where a jury's determination of liability was not the product of undue passion or prejudice, we can order a remittitur to the maximum award the evidence can support.").

Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1266 (11th Cir. 2008). Rodriguez was a case under the Fair Labor Standards Act in which store managers sued to collect unpaid overtime. The case was tried to a jury and the jury returned

an award at least *twice* the amount the evidence at trial supported, even viewing the evidence most favorably to the prevailing plaintiffs.[13] The court then explained:

> We recognize, of course, that the jury had to make approximations and estimates in order to arrive at a damages verdict because Farm Stores did not maintain payroll records documenting the number of hours each store manager worked. The jury was required, however, to operate within the bounds of the evidence presented at trial and to calculate damages using the formula they were instructed to apply. Each store manager testified to the average number of hours he worked each week and to his salary; sometimes they testified to ranges, such as 52 to 60 hours per week. In that and other ways the evidence gave the jury some flexibility in coming up with a dollar amount of damages for each store manager. Unfortunately, the jury's damages verdict ended up well outside the boundaries of the evidence. Whether the error resulted from disregarding the evidence, a mathematical mistake, confusion, or some other reason, it is still error. As our predecessor Court observed, we cannot "permit damage speculation where the formula for calculation is articulable and definable. Flexibility beyond the range of the evidence will not be tolerated." Jamison Co. v. Westvaco Corp., 526 F.2d 922, 936 (5th Cir. 1976).

Id. at 1267-1268. The remedy for such awards outside the bounds of evidence is for the "district court [to] reduce the award to the maximum amount established by the evidence." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 (11th Cir. 2008); see also Gowski v. Peake, 682 F.3d 1299, 1310 n. 10 (11th Cir. 2012);

---

[13] The holding in the Rodriguez case is complicated by the fact that the trial court also erroneously instructed the jury as to the formula they were to apply to calculate the plaintiffs' overtime claims. That is not true in the instant case as the court instructed the jury to award the plaintiff her net lost pay and benefits attributable the FMLA-retaliatory transfer. The evidence at trial established that plaintiff lost her supplemental "investigator's pay" as a result of the transfer, yet the jury awarded damages far in excess of what the supplement was.

Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1448 (11th Cir. 1985) ("In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."); Howell v. Marmpegaso Compania Naviera, S.A., 536 F.2d 1032, 1034–35 (5th Cir. 1976); Natco, Inc. v. Williams Brothers Engineering Co., 489 F.2d 639, 641 (5th Cir. 1974).

    Another example of this remittitur rule is found in Wai v. Federal Express Corp., 461 Fed. Appx. 876 (11th Cir. 2012), an FMLA-retaliation case.  In that case, the court instructed the jury to determine the plaintiff's lost wages and benefits from the date of her termination to the date of the verdict, the evidence of which at trial could not have exceeded $50,000.00.  Yet, the jury returned an award of $225,000.00, causing the parties to assume that the jury had also included "front pay" in the award.  The court of appeals explained that front pay was not part of the compensable damages that could be awarded by the jury, but is part of the court's possible equitable remedies.  Because the damages awarded by the jury clearly exceeded what the evidence of lost wages supported at trial, the court of appeals vacated the award and the parallel liquidated damages award, commenting in a footnote, however, that "We note the possibility that past losses could be handled by way of a proper remittitur…."  Wai v. Federal Express Corp., 461 F. App'x 876, 887 n. 11 (11th Cir. 2012).

These cases are not inconsistent with Johansen and the line of authority on which it rests.  Even Johansen, a case dealing with excessive punitive damages, explained:

> A constitutionally reduced verdict, therefore, is really not a remittitur at all.  A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages.  The court orders a remittitur when it believes the jury's award is *unreasonable* on the facts. A constitutional reduction, on the other hand, is a determination that the law does not permit the award.  Unlike a remittitur, which is discretionary with the court and which we review for an abuse of discretion, …, a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.
>
> We conclude that, upon determination of the constitutional limit on a particular award, the district court may enter a judgment for that amount as a matter of law. Just as the Supreme Court struck the unlawful interest from the jury's verdict in Estill and ordered judgment entered for the remainder, so may the district court strike the unconstitutional excess from a jury's punitive damage award and enter judgment for that amount.  As in Estill, the power to do so is located in the court's authority to enter judgment as a matter of law.  Thus, a court proceeds under Rule 50, not Rule 59, in the entry of judgment for a constitutionally reduced award and the Seventh Amendment is not implicated in this legal exercise.

Johansen v. Combustion Engineering, Inc., 170 F.3d 1320, 1331 (11th Cir. 1999) (internal footnotes and citations omitted).  In the instant case, it is not a matter of the court finding the award to plaintiff to be unreasonable; rather the award of $108,000.00 for the FMLA-retaliatory transfer is *unsupported* by any evidence beyond a maximum amount of $3,310.32 (plus interest).  There simply was no

evidentiary basis in the record for the jury to find that plaintiff lost more than that amount due to the retaliatory transfer.  "Where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount. If a reduction in damages is necessitated by legal error, the reduction is not a remittitur and a new trial is not required."  Marlite, Inc. v. Eckenrod, 2011 WL 39130, at *3 (S.D. Fla. Jan. 5, 2011), aff'd sub nom. Marlite, Inc. v. Am. Canas, 453 F. App'x 938 (11th Cir. 2012) (citing Johansen and New York, L.E. & W.R. Co. v. Estill, 147 U.S. 591, 622, 13 S. Ct. 444, 37 L. Ed. 292 (1883) (modifying a judgment when the jury improperly awarded interest)) (internal citations omitted).

In this case, the court has demonstrated that the jury's award of damages greater than $3,310.32 (plus interest) for plaintiff's wrongful transfer under the FMLA is excessive and unsupported by any evidentiary basis.  The only evidence of a lost wage or benefit (the only damages allowable under the FMLA) attributable to the transfer was the loss of the supplemental "investigator's pay" from the date of the transfer to the date of the verdict, the maximum total of which was $3,310.32.  Indeed, even that sum is a double recovery because it is already reflected in the $50,000.00 award plaintiff received under the Pregnancy Discrimination Act for the same conduct (i.e., wrongful discriminatory/retaliatory

transfer from WANS to patrol).[14]  The court is required, therefore, to reduce the verdict to the maximum allowable under the evidence and to eliminate a double recovery of these lost wages and benefits.  The court is not required to give the plaintiff the option of choosing between a remitted amount or a new trial.

## IV.  Conclusion

In conclusion, the court will enter a judgment remitting the verdict returned by the jury to a combined $161,319.92, comprised of the $50,000.00 award for the discriminatory/retaliatory transfer, $108,000.00 for the discriminatory constructive discharge, and $3,319.92 in liquidated damages under the FMLA.  Plaintiff may also seek an award of attorneys' fees and expenses by filing her application and supporting evidence concerning fees and expenses within fourteen (14) days from this date.

DATED this 25th day of March, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

[14]  Even though this sum is a double recovery for purposes of compensating plaintiff for her lost wages and benefits, the court uses this finding as the basis for determining the "like amount" for liquidated damages under the FMLA.